46275. GEORGIA DEPARTMENT OF NATURAL RESOURCES, ENVIRONMENTAL PROTECTION DIVISION v. UNION TIMBER CORPORATION.
(375 SE2d 856)

MARSHALL, Chief Justice.

The administrative law judge (ALJ) upheld an administrative order issued by the Department of Natural Resources, Environmental Protection Division (EPD), requiring Union Timber Corporation (Union) either to provide proof of financial responsibility or to close a surface impoundment to which it had discharged, and in which it continues to store, hazardous wastes.

The relevant facts as found by the ALJ are as follows. Union operates a facility in Homerville, Georgia, which preserves wood, using creosote. The wastewater treatment sludge that results from this process is a listed (K001) hazardous waste under the provisions of the Georgia Hazardous Waste Management Act, OCGA § 12-8-60 et seq. (the Act), and the rules promulgated pursuant thereto, which control its storage. Union has disposed of this waste in its surface impoundment from at least November 3, 1980, until on or about November 7, 1985, and continues to store it therein. EPD rules require hazardous waste facilities to have liability insurance to compensate for injuries resulting from sudden and non-sudden events. Union has maintained the required "sudden" liability insurance, but never has had any "non-sudden" insurance, although it has made a good faith effort to obtain it. A few hazardous waste facilities in Georgia have been able to obtain the required insurance coverages or meet a financial test alternative. None has obtained a variance from the administrative regulations. Some have begun the process of closure. The rules impos-

ing the insurance requirement gave Union 30 months' notice of the need to obtain the required insurance. 40 CFR § 265.147 (b) (4) (iii). (The CFR was incorporated into state regulations by Department of Natural Resources rules.) In addition, Union was notified several times by the EPD of the "non-sudden" insurance requirement before it was imposed. The amount of insurance of which Union has been required to provide proof represents the minimum amount required of hazardous waste facilities generally to meet the financial responsibility requirements of the Act. Union did not apply for a variance to compliance with the Act until August 7, 1985, over a month after the administrative order was issued and over six months after the insurance was required. Union has assets of less than $5,000,000 and does not have sufficient net worth for it to pass the "financial test" provisions and so avoid the requirements for the liability insurance it lacks. 40 CFR § 265.147 (f). Union presented no evidence that a lesser amount of "non-sudden" insurance than has been required in this case would have been either sufficient to meet the Act's requirements or available to it. Several hazardous waste facilities received letters after January 16, 1985 (the effective date of the insurance requirements) allowing them to continue to operate until November 8, 1985, without both the required insurance coverages as long as they made a good faith effort to obtain the coverages. Union did not receive such a letter. Although the nature and timing of the EPD's enforcement efforts against hazardous waste facilities which did not have the required liability insurance varied from facility to facility, no evidence was presented of any intentional discrimination against Union. Instead, the administrative order under appeal here was issued, approximately five months after the deadline for obtaining the required "non-sudden" insurance, in an attempt to preclude an enforcement action against Union by the United States Environmental Protection Agency (EPA). Formal enforcement actions involving failures to meet the Act's financial responsibility provisions were taken by the EPD against hazardous waste facilities in addition to Union's. As of November 8, 1985, the EPD, pursuant to the Act, was requiring all such facilities to certify compliance with all liability insurance requirements or initiate closure. By appealing the administrative order, Union was able to continue to operate its facility without the required insurance coverage as long as the facility was able to so operate.

The superior court reversed the order of the ALJ, the Court of Appeals denied EPD's application for discretionary appeal, and this Court granted EPD's applications for certiorari and discretionary appeal. We reverse.

1. The superior court erroneously held that EPD is required to consider the type and size of a facility in determining liability insurance requirements. OCGA § 12-8-66 (d) provides:

An application for a permit shall include a demonstration of financial responsibility including, but not limited to, guarantees, liability insurance, the posting of bonds, or any combination of guarantees, liability insurance, or bonds in accordance with Code Section 12-8-68, *which financial responsibility shall be related to the type and size of facility*. [Emphasis supplied.]

This provision requires a permit applicant to demonstrate financial responsibility. The italicized clause does not refer to the EPD director's responsibility, but rather to the applicant's responsibility.

OCGA § 12-8-68 (b), which does refer to the director's responsibility, states:

. . . The director is authorized to establish the financial responsibility requirements for permit applicants and classes of permit applicants, including the establishment of a range of monetary amounts.

OCGA § 12-8-68 (c) then provides that "[t]he board may adopt rules and regulations . . . establishing the criteria for approval . . . of financial responsibility . . . ." Construed together, the above Code sections do not obligate the director to establish financial responsibility requirements for individual hazardous waste facilities. Indeed, if the director is obligated at all, he is to exercise his discretion in a manner consistent with the federal Act and such criteria as the board shall establish. OCGA §§ 12-8-62 (5); 12-8-65 (a) (16) and (21); 12-8-68 (c).

Moreover, under the evidence in the record, the ALJ found that the required financial responsibility limits of liability represented a *minimum* to be required generally of hazardous waste facilities. Indeed, the regulations specifically so state. 40 CFR § 265.147 (b). The fact that the director chose not to lower financial responsibility limits for Union or larger facilities in the midst of an "insurance crisis," simply represents an exercise of discretion entrusted to him by OCGA § 12-8-68 (b). Moreover, this exercise of discretion by the director has had no effect whatsoever upon Union.

2. The superior court erred in ruling that the EPD was obligated to consider Union's request for a variance. The provisions for the granting of variances are discretionary, not obligatory. OCGA §§ 12-8-65 (a) (14); 12-8-69. Moreover, the submission which Union made as a variance request did not comply with the requirements set forth in 40 CFR § 265.147 (c), which was incorporated into state regulations by DNR Rule 391-3-11-.05. Finally, aside from the merits of the variance request, it was not filed until after the issuance of the administrative order here appealed, hence could not have been considered.

3. The superior court erroneously found that Union was singled out for enforcement without any rational basis, thus denying it equal protection.

> Some selective enforcement is not in itself a constitutional violation. [Cit.] To be a constitutional violation, the selective enforcement must represent an *intentional and purposeful discrimination* based upon some unjustifiable standard such as race, religion, or other arbitrary classification. [Cit.] [Emphasis supplied.]

*Sabel v. State*, 250 Ga. 640, 643 (4) (300 SE2d 663) (1983). The board found as a fact that no evidence was presented of any intentional discrimination against Union. The record shows that the enforcement action against Union was based upon a memorandum of understanding between the EPA and the State of Georgia which applies to all hazardous waste facilities, and that Union was allowed to conduct operations as long as other wood treating companies. Union had the burden of presenting sufficient evidence of intentional or purposeful discrimination, etc., *State v. Causey*, 246 Ga. 735, 737 (2) (273 SE2d 6) (1980), which burden would not have been carried even if it had been shown that other persons or classes of persons may have violated the law without being prosecuted therefor. *Cone v. State*, 184 Ga. 316, 324 (2) (191 SE 250) (1937). Union asserts that the only alternative it was given was to close its facility, which also requires insurance, which it was unable to obtain, and thus was required to perform an impossible act. However, there was evidence in the record (testimony of witness Albert Langley) to the effect that in the past, the EPD had allowed a violator a certain time within which to close the facility under an approved closure plan with no enforcement of the insurance requirement during the time necessary for the closure. Moreover, even if other testimony can be construed to mean that the violator is subject to penalties for operating without insurance during the closure period, this does not impose an impossible act to be performed.

4. The superior court erred in ruling that the regulations adopted pursuant to the Act are invalid as arbitrary and capricious, hence violative of due process. State legislation is constitutional with respect to due process if it bears a rational relation to a proper and constitutionally permitted legislative purpose. *State v. Major*, 243 Ga. 255, 257 (253 SE2d 724) (1979) and cits. The financial responsibility requirements under the Act and the regulations meet this standard by protecting the public health, safety and well-being of our citizens, protecting and enhancing the quality of the environment, and maintaining a comprehensive statewide program for the management of hazardous wastes, in accordance with the legislative policy as ex-

pressed in OCGA § 12-8-61.

As the ALJ found, the fact "that the insurance is very expensive or difficult to obtain for certain facilities . . . reflects the risks involved, which in turn emphasizes the need for the insurance." Thus, Union is subject to no more responsibility than it should rightly bear, as determined by the risk and the insurance market. The fact that Union has not been subjected to arbitrary and capricious requirements is clear from the record. A number of hazardous waste facilities in the state have been able to meet the hazardous waste insurance requirements or to self insure. The record indicates that to the extent that hazardous waste operators are experiencing difficulty complying with insurance requirements, this is due to insurance industry responses to market and economic conditions, not the regulations. The extent to which any particular hazardous waste operator is able or unable to comply with the alternatives to the insurance requirements provided by the Act and the regulations promulgated pursuant thereto, relates solely to its financial ability to comply.

Moreover, Union has continued to use its surface impoundment until November 8, 1985, as any other facility similarly situated. As of that date, OCGA § 12-8-66 (j) required that operators certify financial responsibility for such impoundments or lose their status as essentially permitted facilities and close. See *Vineland Chemical Co. v. U. S. Environmental Protection Agency*, 810 F2d 402, 404, 408 (3d Cir. 1987), involving the federal equivalent of OCGA § 12-8-66 (j). Thus, as the ALJ held, the order requires no more than is now required of all hazardous waste facilities, i.e., have the required insurance or initiate closure.

5. In ruling that the financial responsibility requirements under the Act must fall because they are arbitrary and capricious, the superior court mistakenly relied upon *National Lime Assn. v. EPA*, 627 F2d 416 (1979), and *Hooker Chemicals & Plastics v. Train*, 537 F2d 620 (1976). Those cases were decided in the context of federal laws which required that certain technologies (such as "best available control technology" or "demonstrated technology") be required in certain industries; they had the question of whether the EPA had followed express Congressional mandates in identifying such technologies. To the extent that those cases may be applicable to this case, however, they support the EPD's position, in that, in both of them, actions taken by the EPA were modified for failure to adhere to legislative directions. By adopting minimum financial assurance standards set by the federal government, the EPD has done exactly what the General Assembly directed. OCGA §§ 12-8-62 (5); 12-8-65 (a) (16).

6. Under the Administrative Procedure Act, the administrative agency's findings are judicially reviewable if they are "[c]learly erroneous in view of the reliable, probative, and substantial evidence on

the whole record." OCGA § 50-13-19 (h) (5). "This language has been interpreted to preclude review if 'any evidence' on the record substantiates the administrative agency's findings of fact and conclusions of law. *Ga. Dept. of Human Resources v. Holland,* 133 Ga. App. 616 (211 SE2d 635) [1974]." *Flowers v. Ga. Real Estate Comm.,* 141 Ga. App. 105 (1) (232 SE2d 586) (1977). The superior court judge cannot substitute his judgment for that of the department as to the weight of the evidence on questions of fact. OCGA § 50-13-19 (h). The superior court erred, as set out above, in making the following findings of fact and conclusions of law, and in reversing the department's decision.

(a) The superior court found that the facility in question is a surface impoundment no longer in use, whereas the evidence substantiates the conclusion of the Board of Natural Resources (the board) that it is a storage facility subject to the Act.

(b) The superior court found that the testimony, by the branch chief of the EPD, is to the effect that the subject administrative order was issued against Union, not because of a decision by the EPD, but because of a request by the federal EPA. The ALJ found that the order was issued in an attempt to preclude an enforcement action against Union by the EPA. The record shows that the decision to take enforcement action was made by the EPD, and that its decision was consistent with that agency's policies and agreements and federal Act enforcement policies, which applied to hazardous waste facilities generally.

(c) The superior court found that there is no evidence upon which to determine that Union would not be entitled to a variance, and that there is no procedure applying to variances. 40 CFR § 265.147 (c), which was incorporated into state regulations by DNR Rule 391-3-11-.05, expressly provides for variances. The ALJ ruled that the evidence made it clear that Union could not qualify for a variance even if the application had been timely, which finding is supported by the record.

(d) The superior court found that no effort was made by the Department of Natural Resources to determine financial responsibility based upon the type and size of the facility. We have held in Div. 1 hereinabove that this was not required. Moreover, 40 CFR § 265.147 (b) (i), (ii) and (iii) do establish different dates for compliance with financial responsibility requirements according to the size of the facility. Facilities such as Union's were allowed 30 months to meet these requirements, while larger facilities were allowed as little as six months. In addition, as we have held in Div. 1, the financial responsibility requirements to which Union was subject were minimum ones.

(e) The superior court determined that the regulations relied upon provide no means by which one can comply with financial responsibility requirements in the event that insurance is not available.

As we have already noted, the evidence (the Act and the testimony) showed that a financial test alternative is provided. The ALJ found that Union could not pass this test, and that it had presented no evidence that a lesser amount of "non-sudden" liability insurance than that required by 40 CFR § 265.147 (b) would have been either sufficient to meet the Act's requirements or available to Union.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED FEBRUARY 15, 1989.

*Michael J. Bowers, Attorney General, Isaac Byrd, Senior Assistant Attorney General*, for appellant.

*Sutton, Reddick, Slocumb & Acree, Berrien L. Sutton*, for appellee.