Eleanor SILINGO, and John P. Silingo, her husband,
Plaintiffs-Appellants,

v.

VILLAGE OF MUKWONAGO, Wausau Insurance
Companies, American Legion Post No. 375, Sentry
Insurance Companies, Great Southwest Insurance
Company, and John Doe, an unknown vendor,
Defendants-Respondents.†

Court of Appeals

*No. 89–1697. Oral argument February 6, 1990.—Decided May 2,
1990.*

(Also reported in 458 N.W.2d 379.)

†Petitions to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Eugene A. Kershek* and *E. Joseph Kershek* of *Kershek & Kershek Law Offices* of Milwaukee and oral argument by *Eugene A. Kershek.*

On behalf of the defendants-respondents, Village of Mukwonago and Wausau Insurance Companies, the cause was submitted on the brief of *Gregg T. Heidenreich* of *Law Offices of Straub & Schuch* of Milwaukee and oral argument by *Gregg T. Heidenreich.*

On behalf of the defendants-respondents, American Legion Post No. 375, Sentry Insurance Companies and Great Southwest Insurance Company, the cause was submitted on the brief of *Thomas E. Valentyn* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee and oral argument by *Thomas E. Valentyn.*

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J. Eleanor Silingo appeals from a summary judgment and an order dismissing her personal injury action against the Village of Mukwonago (village) and the American Legion Post No. 375 (Legion).[1] The trial court concluded that the village and the Legion were immune from liability pursuant to Wisconsin's "recreational immunity" statute, sec. 895.52, Stats. Based on the summary judgment record in this case, we conclude that material issues of fact exist as to whether Silingo was engaged in "recreational activity" within the meaning of the statute. Accordingly, we reverse the judgment and order and remand for further proceedings on Silingo's complaint.

---

[1] The trial court also dismissed a derivative cause of action alleged by John Silingo, Eleanor's husband. He also appeals.

The controlling facts in the summary judgment record are not in dispute. The village owns a municipal park. On occasion, the village allows groups to hold events at the park. The village allowed the Legion to conduct an event known as "Maxwell Street Days" at the park on June 10, 1984. Maxwell Street Days is an outdoor flea market at which vendors sell antiques and other items, new and old.

The Legion paid the village a $50 security deposit to cover the cost of any damage done to the park as a result of the Maxwell Street Days event. The Legion leased over one hundred park sites to the vendors at a cost of $20 per site.[2] While attending the event, Silingo stepped into a hole and was injured.

We review summary judgment determinations *de novo,* independent of the trial court's decision. *Acharya v. Carroll,* 152 Wis. 2d 330, 338, 448 N.W.2d 275, 279 (Ct. App. 1989). In addition, the construction of a statute and its application to a set of facts present questions of law—matters also reviewed by us without deference to the trial court's decision. *L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989).

---

[2]The Legion raises an objection to Silingo's attorney's affidavit submitted in response to the summary judgment motions. At oral argument, we questioned Legion's counsel whether this objection was premised upon sec. 802.08(3), Stats., requiring that summary judgment affidavits be made on personal knowledge, or whether counsel merely disagreed with the affidavit's statement. Counsel indicated that he was questioning the accuracy of the affidavit and, therefore, its relevancy. Despite counsel's opportunity at oral argument to expressly ground his objection on sec. 802.08(3), he declined to do so. We therefore deem Silingo's attorney's affidavit competent summary judgment evidence.

We start with the recreational immunity statute, sec. 895.52, Stats. At subsec. (2), this law provides:

**(2)** NO DUTY; IMMUNITY FROM LIABILITY.
(a) Except as provided in subs. (3) to (6), no owner . . . owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner . . . is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property . . ..

The immunity granted by this statute travels to, *inter alia,* private persons, the federal government, the state, counties, *municipal governing bodies and nonprofit organizations. See* sec. 895.52(1)(a), (c), (d), Stats. In this case, the village qualifies as a municipal governing body and the Legion qualifies as a nonprofit organization.

The governmental body loses this immunity: (1) when an injury occurs at an event on property owned by the governmental body for which an admission fee is charged for the spectators; or (2) for an injury on property designated by the governmental body for recreational activities caused by a malicious act or a malicious failure to warn against a known unsafe condition. Sec. 895.52(4), Stats.

A nonprofit organization loses this immunity for an injury occurring on property owned by the nonprofit organization and which is caused by a malicious act or a

malicious failure to warn against a known unsafe condition. Sec. 895.52(5), Stats.

The summary judgment record in this case does not reveal any evidence, nor permit any reasonable inference, that an admission fee to the event was charged by either the village or the Legion.[3] Nor does the record reveal any evidence or allow an inference of a malicious act or malicious failure to warn by the village or the Legion. Therefore, the village and the Legion are entitled to the statute's immunity if the flea market activity constitutes a "recreational activity." This is the crucial issue in this case.

Section 895.52(1)(g), Stats., defines "recreational activity":

> "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game

[3]Silingo's attorney's affidavit in opposition to the summary judgment motion recites that a parking fee was collected by a fireman at a site across the street from the event. This does not raise a *reasonable* inference that this charge was an admission fee or that the village collected or charged this fee. In fact, an affidavit presented by the village reveals that the village maintains no fire department but is serviced by a volunteer fire department. The affidavit further recites that any parking revenue collected at the Maxwell Street Days event is not shared with the village.

or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

The legislative intent relative to this legislation is contained in the session laws:

The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation *should be liberally construed in favor of property owners to protect them from liability.*

Sec. 1, 1983 Wis. Act 418 (emphasis added).

The trial court originally agreed with Silingo's contention that the Maxwell Street Days event was essentially commercial, not recreational, and denied the summary judgment motion. However, following this court's decision in *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), the village and the Legion asked the court to reconsider its ruling. The court agreed and reversed its earlier ruling.

In *Turtle Lake,* the Turtle Lake Lions Club sponsored a fair on the grounds of the Turtle Lake Village Park. The fair was described as a "hometown fair . . . an agricultural show involving 125 head of cattle, carnival rides and booths, food and beer concessions, and a demolition derby." *Id.* at 488, 431 N.W.2d at 697. Noting the liberal construction to be accorded "recreational activity" and the goals of the legislation as set forth in the

session law, the court of appeals concluded that the Lions Club fair constituted "recreational activity" within the meaning of the statute.[4]

In its written decision reversing its earlier ruling, the trial court concluded that, while the Maxwell Street Days was a commercial undertaking from the standpoint of the vendors, it was not from the standpoint of Silingo. The court concluded that the claimant's purpose in entering the owner's land controlled on the question of "recreational activity."

Silingo had testified at a deposition that her visits to the Maxwell Street Days were principally for pleasure and relaxation although she also occasionally purchased items at the event. Based upon this testimony, the trial court concluded that Silingo's activity was akin to "sight-seeing," one of the enumerated recreational activities in sec. 895.52(1)(g), Stats. The court also noted that *Turtle Lake* and the session law mandated a liberal construction of "recreational activity."

We first address the perspective from which "recreational activity" should be addressed. *Turtle Lake* did not address this question.

At first blush, sec. 895.52(2)(a), Stats., would appear to support the trial court's approach: "[N]o owner . . . owes [a duty] to any person *who enters the owner's property to engage in a recreational activity . . ..*" (Emphasis added.) Likewise with sec. 895.52(2)(b): "[N]o owner . . . is liable for any injury to. . . *a person engaging in a*

---

[4]The court of appeals also concluded in *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988) that the Lions Club qualified as an "owner" of the village property for purposes of the recreational immunity statute because the club "occupied" the property. *Id.* at 489–91, 431 N.W.2d at 698–99; *see also* sec. 895.52(1)(d), Stats. Therefore, the Legion qualifies as an owner of the property under the facts of this case.

543

*recreational activity on the owner's property . . .."* (Emphasis added.) However, when viewed in light of the legislative goals, we conclude that such a subjective approach, measured *solely* from the user's perspective, is inappropriate.

The impetus for recreational immunity laws is the continual shrinkage of the public's access to recreational land in an ever more populated world. *Turtle Lake,* 146 Wis. 2d at 489, 431 N.W.2d at 698. In an effort to encourage owners to open their lands, the legislature enacted sec. 895.52, Stats., limiting an owner's liability when third parties entered or used the owner's land for a recreational purpose. Sec. 1, 1983 Wis. Act 418. As such, this legislation accorded landowners some degree of certainty regarding their potential liability. This goal is not served by making the test for "recreational activity" a subjective one.

Instead, we adopt an objective test which requires that *all social and economic aspects* of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence. While this approach does not preclude consideration of the user's subjective assessment of the activity, such assessment is not controlling.

Applying this objective test to the record in this case, we see material issues of fact remaining for resolution. On the one hand, the intrinsic nature of the Maxwell Street Days, staffed with over one hundred flea market vendors, suggests a commercial activity. The event's purpose was, in part, to offer the vendors' merchandise for sale to the public; its consequence was the public's presence and opportunity to transact business with the

vendors. Although staged in a less formal setting than a mall or store, an economic relationship between seller and potential buyer was clearly at work.

On the other hand, the "community flavor" of the event, the "donation" of the site by the village, and the sponsorship motivation by the Legion (even in the face of its profit opportunity) may have served, as in *Turtle Lake,* to make the event recreational rather than commercial. This determination, we conclude, requires a full trial exploration of these considerations.

Summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy. *Energy Complexes, Inc. v. Eau Claire County,* 152 Wis. 2d 453, 461–62, 449 N.W.2d 35, 38 (1989). Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment. *Id.* at 462, 449 N.W.2d at 38. With these standards in mind, we cannot say, as a matter of law, that the predominant theme of the Maxwell Street Days is so self-evident that summary judgment was appropriate.

*By the Court.*—Judgment and order reversed and cause remanded.