A94A0207. ARMOR ELEVATOR COMPANY v. HINTON.
A94A0208. PSI SECURITY v. HINTON.
(443 SE2d 670)

McMURRAY, Presiding Judge.

Plaintiff brought this tort action against VMS/Tower Place Limited Partnership ("VMS"), Armor Elevator Company ("Armor") and PSI Security ("PSI") seeking damages stemming from her fall from an elevator at Tower Place in Atlanta, Georgia. She alleged that the elevator stopped several feet from the ground floor and that she fell from the elevator when she exited it. The liability of VMS, the operator and manager of Tower Place, was predicated on its maintenance and control of the premises. Armor was alleged to be liable because it contracted with VMS to service and repair the Tower Place elevators. Plaintiff alleged that PSI, a private security service providing security services on a contract basis to VMS, was liable because it failed to warn her that the elevator was malfunctioning.

Defendants answered the complaint and denied any liability to plaintiff. Thereafter, VMS filed a voluntary petition for bankruptcy and the case against it was stayed.

During the discovery stage of the proceedings, plaintiff deposed the following: On August 9, 1990, plaintiff took her daughter to a modeling class at Tower Place. Prior to that date, plaintiff had been to Tower Place approximately 18 times. The modeling class was held on the first floor, one floor above the ground floor level. Plaintiff's daughter finished her class and preceded plaintiff to the ground floor. Plaintiff followed in the elevator.

As the elevator descended, it came to a halt and the lights went out for a few seconds. Plaintiff had the feeling that the elevator did not have time to descend all the way to the ground floor. Suddenly,

the lights came on and began to flash and blink "real fast . . . like a strobe light." Plaintiff became "disoriented."

After a few more seconds, the doors opened. Plaintiff was "thankful to be in the lobby." She thought that it would be best to get out before the doors closed again. So, she "started out immediately." As she did so, plaintiff made eye contact with a lady who was standing on the ground floor. The lady "looked down and had a horrible look on her face." The lady's expression caused plaintiff to look down, but it was too late for plaintiff to stop her exit. She fell three feet to the ground floor.

Plaintiff made her way to the front desk and spoke with a PSI security guard. She told him what happened. He said that there had been some problems with the elevator before; that it "gets stuck all the time."

Armor and PSI moved for summary judgment. PSI supported its motion with the affidavit of its president, James W. Pless IV. He deposed that PSI entered into a contract with VMS to provide security guard services at Tower Place; and that PSI's security guard obligations went to VMS, not the general public. Pless also deposed that if the elevators at Tower Place malfunctioned, "as they did on occasion . . . we notified [VMS] of the problem as it came to our attention in order that the Tower Place property manager . . . could take appropriate action. . . ." Finally, Pless deposed that on the day in question, "we did not receive any reports of any elevator malfunctions or have any knowledge that any elevators were not working properly until [plaintiff's] accident actually took place."

A copy of PSI's security guard contract with VMS was attached to Pless's affidavit. In pertinent part, it reads as follows: "[PSI] shall provide trained, uniformed, and unarmed personnel to be posted as security personnel at the premises of [VMS]. . . . [VMS] may designate in writing to [PSI] specific locations and deployment of guard personnel so long as it will not necessarily endanger their health or safety. . . . In the absence of such written instructions, [PSI] will determine, at its own discretion, the locations and deployment of personnel. . . . [PSI] acknowledges its responsibility by law, for the acts and omissions (of legal duties) of its employees and agents in carrying out the duties imposed upon [PSI] herein. . . . In the event of a security threat to [VMS] of any type (robbery, riot, vandalism, burglary, fire, property crimes, assault or otherwise), [PSI's] primary duty is to notify appropriate public law enforcement or other emergency personnel."

The trial court denied Armor's and PSI's summary judgment motions but certified its rulings for immediate review. We granted Armor's and PSI's interlocutory appeal applications. Armor appealed in Case No. A94A0207; PSI appealed in Case No. A94A0208. *Held*:

1. Under certain circumstances, a plaintiff may be excused "from exercising that degree of care . . . which the law would otherwise hold to be necessary in an ordinarily prudent person. The doctrine that a plaintiff may be excused from the otherwise required degree of care because of circumstances creating an emergency situation of peril is well recognized. From this stems the rule that a lesser degree of prudence may be sufficient to constitute ordinary care where there are circumstances causing stress or excitement. *City of Rome v. Phillips,* 37 Ga. App. 299 (2) (139 SE 828). The doctrine is further broadened to cover situations where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur." *Redding v. Sinclair Refining Co.,* 105 Ga. App. 375, 378 (124 SE2d 688).

We think the facts of this case present a jury question as to whether plaintiff should be excused from exercising the otherwise ordinary degree of care. True, plaintiff deposed that when the elevator stopped, she suspected that it did not have time to reach the ground floor. However, she also deposed that the rapid blinking of the elevator lights made her "disoriented"; that when the doors opened she was "thankful to be in the lobby"; and that she started out of the elevator "immediately" because she thought it best to exit before the doors closed again. Given this narrative, a jury could conclude that, due to the stress and excitement of the moment, plaintiff should be held to a lesser degree of prudence. Compare *Stephens v. Dover Elevator Co.,* 109 Ga. App. 112 (135 SE2d 593) with *City of Rome v. Phillips,* 37 Ga. App. 299, 300 (2), supra. As it is said: "In determining the question of fact whether the conduct of a person frightened by an immediate occurrence is negligent, the standard to be applied is whether a reasonably prudent person in the same circumstances might have become frightened as this person did and what a reasonably prudent person in the same circumstances would have done. In this case fair and intelligent minds might easily differ, and the question must be decided by a jury." *French v. Stephens,* 117 Ga. App. 61 (159 SE2d 484).

The trial court did not err in denying Armor's motion for summary judgment.

2. It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty. *Montega Corp. v. Grooms,* 128 Ga. App. 333, 340 (9) (196 SE2d 459); *Ramey v. Pritchett,* 90 Ga. App. 745, 750, 751 (84 SE2d 305). In most instances, a person owes no legal duty to assist or warn another person who is or may be in danger. See *Thomas v. Williams,* 105 Ga. App. 321, 326 (3) (124 SE2d 409); *The Shirley Cloak &c. Co. v. Ar-*

*nold,* 92 Ga. App. 885, 892 (90 SE2d 622). We can see no such duty arising by operation of law on the part of PSI.

However, a legal duty can arise not only by operation of law but by a contract between the parties. *Ferrell v. Haas,* 136 Ga. App. 274, 276 (220 SE2d 771). And "it is well established that breach of contractual duties may give rise to an action for damages for personal injuries. [Cit.]" *Paz v. Marvin M. Black Co.,* 200 Ga. App. 607, 608 (2) (408 SE2d 807). Did PSI have a duty to assist or warn plaintiff pursuant to its contract to provide security services to VMS? We think not.

"With regard to third-party beneficiaries the rule is well established: 'In order for a third party to have standing to enforce a contract under Code Ann. § 3-108 (now OCGA § 9-2-20 (b)) it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient.' [Cits.]" *Bartley v. Augusta Country Club,* 172 Ga. App. 289, 290 (322 SE2d 749). It follows that, "[i]n personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury. . . ." *Bizien v. Port Auth. of New York & New Jersey,* 577 FSupp. 1093, 1102 (E.D.N.Y. 1983).

In *Bizien,* plaintiffs were injured by protestors during a protest at a British Airways airline terminal at Kennedy Airport. They brought personal injury actions against the Port Authority, British Airways, and a security company which was under contract to supply guards and other security personnel at the British Airways terminal. Applying New York law (a third party may recover under a contract only where the contracting parties intended to confer a benefit upon him), the court analyzed the contract between the security company and British Airways and found no intent to provide protection for the plaintiffs. Id. Accordingly, the court found that plaintiffs could not maintain their suit against the security company as third-party beneficiaries of the security company's contract with British Airways.

We are persuaded by the logic of *Bizien* and other such cases, e.g., *Whitehead v. USA-One,* 595 S2d 867 (Ala. 1992) (contract and deposition testimony demonstrates that security company owed duty to apartments, not tenants of apartments), and find that they comport with Georgia law concerning third-party beneficiaries. Looking to the contract between PSI and VMS, we find no intent to confer a benefit on Tower Place patrons. We conclude, therefore, that PSI neither owed nor assumed any duty to assist or warn plaintiff.

The trial court erred in failing to grant PSI's motion for summary judgment.

*Judgment affirmed in Case No. A94A0207; judgment reversed in*

*Case No. A94A0208. Pope, C. J., and Smith, J., concur.*

DECIDED APRIL 18, 1994.

*Bondurant, Mixson & Elmore, John E. Floyd, J. Scott McClain,* for Armor Elevator.

*Croy, Harris & Hammond, A. Cullen Hammond,* for PSI Security.

*Lindsey & Jacobs, Tamara Jacobs,* for Hinton.