S00A0899. ANDERSON et al. v. ATLANTA COMMITTEE FOR THE OLYMPIC GAMES, INC. et al.
S00A0901. ANDERSON et al. v. AT&T CORPORATION et al.
S00A1069. HAWTHORNE et al. v. ATLANTA COMMITTEE FOR THE OLYMPIC GAMES, INC. et al.
(537 SE2d 345)

HUNSTEIN, Justice.

This Court consolidated these three appeals because they all involve challenges to the constitutionality of the Recreational Prop-

erty Act ("RPA"), OCGA § 51-3-20 et seq., and its application to two suits arising out of the bombing in Centennial Olympic Park during the 1996 Olympic Games. The plaintiffs seek damages for wrongful death and personal injuries from the Atlanta Committee for the Olympic Games, Inc. (ACOG), which is the lessee of the park property;[1] from ACOG's director of security, William Rathburn; from AT&T Corporation, a sublessee of property within the park; and from two security services, Borg-Warner Protective Services Corporation, hired by ACOG, and Anthony Davis, Inc. ("ADI"), hired by an agent of AT&T.

The Anderson plaintiffs appeal in Case No. S00A0899 from the grant of summary judgment in favor of ACOG and Rathburn and appeal in Case No. S00A0901 from the grant of summary judgment to AT&T and the two security services as well as from the grant of AT&T's motion to dismiss. In Case No. S00A1069, the Hawthorne plaintiffs appeal the grant of summary judgment to all the defendants in their wrongful death action.

1. We find no error in the trial court's ruling that Georgia's Recreational Property Act is constitutional.

(a) Appellants first argue that the RPA is unconstitutionally vague as applied to the facts in this case. See generally *Hall v. State*, 268 Ga. 89 (1) (485 SE2d 755) (1997) (vagueness challenge to statutes not involving First Amendment freedoms must be examined in light of facts of case at hand). The RPA limits, with certain exceptions, the liability of an owner of land who has made property available without charge to the public for recreational purposes. OCGA §§ 51-3-22, 51-3-23. OCGA § 51-3-21 (4) provides that "recreational purposes"

> includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites.

A statute must be definite and certain to be valid, and when it is so vague and indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law. To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent. *Jekyll Island-*

---

[1] The park is owned by the Georgia World Congress Center Authority, which is not a party in this litigation.

*State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152 (2) (464 SE2d 808) (1996).

The legislative intent of the RPA is "to encourage owners of land to make land and water areas available to the public for recreational purposes." OCGA § 51-3-20. See also *City of Tybee Island v. Godinho*, 270 Ga. 567 (511 SE2d 517) (1999). By its express language, the RPA is not limited to the activities delineated within OCGA § 51-3-21 (4) but encompasses any recreational activity, i.e., any amusement, play or other form of relaxation which refreshes the mind or body. See Ballentine's Law Dictionary (3rd ed.), p. 1071. We hold that the RPA provides fair notice to persons of normal intelligence that a park created to celebrate the spirit of an historic athletic and cultural event and to provide a gathering place for visitors to relax and enjoy themselves constitutes property available to the public for recreational purposes so as to come within the Act's immunity provisions.

(b) We find no merit in appellants' argument that the RPA unconstitutionally violated their due process and equal protection rights. The RPA does not disadvantage a suspect class or interfere with the exercise of a fundamental right and thus it need only bear a reasonable relationship to a legitimate state purpose. *City of Atlanta v. Watson*, 267 Ga. 185 (1) (475 SE2d 896) (1996). The RPA reasonably promotes the legitimate governmental purpose of making recreational property more accessible to the public and the classification the RPA draws between those persons injured while on recreational property and those persons injured on other premises is rationally related to this legitimate purpose. See generally *Love v. Whirlpool Corp.*, 264 Ga. 701 (449 SE2d 602) (1994) (equal protection analysis); *Dept. of Nat. Resources v. Union Timber Corp.*, 258 Ga. 873 (4) (375 SE2d 856) (1989) (due process analysis).

(c) The RPA does not violate the provision in Article III, Section V, Paragraph III of the Georgia Constitution of 1983 prohibiting the passage of a law which refers to more than one subject matter. *Wall v. Bd. of Elections of Chatham County*, 242 Ga. 566 (3) (250 SE2d 408) (1978).

2. The trial court granted summary judgment in favor of ACOG finding that no questions of fact remain that the RPA insulates ACOG from liability for appellants' injuries. In so holding, the trial court relied upon the holdings in *Quick v. Stone Mountain Memorial Assn.*, 204 Ga. App. 598 (420 SE2d 36) (1992) and *Hogue v. Stone Mountain Memorial Assn.*, 183 Ga. App. 378 (358 SE2d 852) (1987). In those cases, the Court of Appeals determined that Stone Mountain Park was a public recreation area notwithstanding the fact that the park derived substantial revenues from the sale of special permits, concessions, and tickets to ride and other attractions located on the premises, focusing on the fact that the plaintiffs' injuries in each case

resulted from a "general recreational usage of the park premises, for which no fee was charged, rather than from the use of any of the facilities . . . for which a fee was charged." Id. at 380-381.

We have recognized that in order for the RPA to apply, it is not necessary that the public be on property for "sheer recreational pleasure" and that the RPA may apply in situations where commercial interests are mixed with recreational activities. *City of Tybee Island v. Godinho*, supra, 270 Ga. at 567 (RPA shielded city from liability for injury on sidewalk to beach). In *Godinho*, we noted that the primary purpose of the sidewalk property was recreational and the City was not in the business of entertainment or recreation. Id. at 568-569. Compare *Cedeno v. Lockwood*, 250 Ga. 799 (2) (301 SE2d 265) (1983). We held in *Cedeno* that

> [t]he important criterion is the purpose for which the public is permitted on the property. If the public is invited to further the business interests of the owner — e.g., for sales of food, merchandise, services, etc. — then the RPA will not shield the owner from liability even though the public receives some recreation as a side benefit.

Id. at 802. This Court has also recognized that property which has been made available to the public "for advertising purposes and to promote the sale of the [property owner's] products" does not necessarily take the property out of the RPA. *Bourn v. Herring*, 225 Ga. 67 (1) (166 SE2d 89) (1969).

Appellants argue that at the time of their injuries, ACOG's purpose in making Centennial Olympic Park available to the public was to further a commercial enterprise and thus this case is more similar to *Cedeno*, involving Underground Atlanta, than *Quick* and *Hogue*, involving Stone Mountain Park. Our cases contain little guidance to the courts in determining the applicability of the RPA in mixed-use cases under facts like those present in this case. Although the cases refer to the business interests of the property owner, an owner's profit motive does not necessarily create a reasonable inference that the event is commercial rather than recreational in nature. Rather, it is the purpose for which the owner earned the profits. For example, profits earned that are used to pay for property maintenance or public services are "not profits in the ordinary commercial sense of the word." *Fischer v. Doylestown Fire Dept.*, 543 NW2d 575, 578 (Wis. App. 1995) (fire department hosted community picnic where profits paid for park and fire equipment).

Based on our review of Georgia case law and foreign jurisdictions which have addressed this issue, we find persuasive the test promulgated by the Wisconsin Court of Appeals in *Silingo v. Village of*

*Mukwonago*, 458 NW2d 379 (Wis. App. 1990). That court proposed a balancing test to determine whether an activity is "recreational":

> [The test] requires that *all social and economic aspects* of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence.

(Emphasis in original.) Id. at 382. This test "does not preclude consideration of the user's subjective assessment of the activity," id. at 383, but as in the Stone Mountain Park cases, the user's assessment is not the controlling factor. See *Quick, Hogue,* supra.

We cannot conclude from the ruling in the ACOG appeals whether the trial court's consideration of the RPA issue encompassed all the factors we now deem appropriate for review in determining the applicability of the RPA. Therefore, in light of our adoption of this balancing test, we deem it appropriate to reverse the trial court's grant of summary judgment to ACOG and remand the appeal to the court for it to apply the test to ACOG's contention that it is entitled to summary judgment under the RPA. In addressing this contention, the trial court should bear in mind our holding in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) establishing the rule for review of summary judgment in negligence cases.

3. The trial court correctly held, based on the uncontroverted facts adduced by the parties, that appellees were entitled to summary judgment on appellants' claims that appellees acted willfully or maliciously within the meaning of OCGA § 51-3-25 (1). See *City of Geneva v. Yarbrough*, 707 S2d 626, 629 fn. 2 (Ala. 1997).

4. Under the uncontroverted facts in this case, any duty Borg-Warner and ADI, the two security services companies, may have owed appellants arose not by operation of law but by contract. *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27 (2) (443 SE2d 670) (1994). As recognized in *Armor Elevator Co.*,

> "[i]n personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury. . . ." [Cit.]

Id. at 30. See also *Donalson v. Coca-Cola Co.*, 164 Ga. App. 712 (2) (298 SE2d 25) (1982) (both parties to contract must intend that third person should be beneficiary). Looking at the contract in the record between Borg-Warner and ACOG as well as the uncontroverted testi-

mony by ADI's president regarding the terms in its contract with AT&T's agent, there was no intent in the contracts to confer a benefit on Centennial Olympic Park visitors and that under the terms thereof the security services companies neither owed nor assumed any duty to protect or warn appellants. See id. Therefore, applying the "right for any reason" principle, we affirm the trial court's grant of summary judgment to Borg-Warner and ADI.

5. It is uncontroverted that ACOG's director of security, Rathburn, was neither the owner nor the occupier of the property where appellants were injured. Accordingly, he is not directly liable to appellants under any premises liability theory. Compare *Bourn v. Herring*, supra, 225 Ga. 67 (1) (corporation and general manager may be subject to liability as owners of property). It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty. *Armor Elevator*, supra, 213 Ga. App. at 29 (2). We find the grant of summary judgment to Rathburn was correct for the reason that the evidence is uncontroverted that Rathburn owed no duty in regard to appellants either generally or in his status as an ACOG employee.

6. Summary judgment was properly granted to AT&T. The trial court properly determined that appellants' claims based on premises liability failed against AT&T because appellants admitted in their complaints that AT&T was not an owner or occupier of the property where appellants received their injuries and the record establishes that no fact question was presented regarding approaches to AT&T-controlled premises. See *Motel Properties v. Miller*, 263 Ga. 484 (2) (436 SE2d 196) (1993). The record also establishes that AT&T undertook no duty in regard to the general public outside of the property it leased from ACOG and there is no evidence to support the contention that AT&T can be held liable with ACOG under any joint venture or partnership theory.

7. In light of our holding in Division 2, we reverse the trial court's ruling on the scope of discovery allowable to appellants and remand the issue to allow the trial court to reevaluate the discovery requests.

*Judgment affirmed in Case No. S00A0901; judgments affirmed in part and reversed and remanded in part in Case Nos. S00A0899 and S00A1069. All the Justices concur, except Carley, J., who concurs in part and dissents in part.*

CARLEY, Justice, concurring in part and dissenting in part.

I fully concur in the judgment in Case Number S00A0899. I further concur in part in the judgments in Case Numbers S00A0901 and S00A1069. However, I dissent in part to these judgments to the extent that they affirm the trial court's grant of summary judgment

in favor of Borg-Warner Protective Services Corporation, Inc. and Anthony Davis, Inc., as I do not agree with Division 4 of the majority opinion.

DECIDED OCTOBER 23, 2000 —
RECONSIDERATION DENIED NOVEMBER 13, 2000.

*Slappey & Sadd, James N. Sadd, Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Thornton & Elsner, Guerry R. Thornton, Jr., James W. Howard, Sharon E. Howard, Lanham & McGehee, Clark H. McGehee, Johnson & Ward, Carl T. Maxwell III, Madison B. McClellan, Tricia P. Hoffler, Bauer & Deitch, Gilbert H. Deitch, Garland, Samuel & Loeb, Robin N. Loeb, Taylor, Harp & Callier, Jefferson C. Callier, Clifford J. Steele, Willie E. Gary,* for Anderson and Hawthorne et al.

*King & Spalding, Horace H. Sibley, Dwight J. Davis, Hawkins & Parnell, T. Ryan Mock, Jr., Frederick A. Bading, Matthew F. Barr, Parker, Hudson, Ranier & Dobbs, G. Wayne Hillis, David G. Russell, Erika C. Birg, Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Mary K. Greene, Freeman, Mathis & Gary, Theodore Freeman, Philip W. Savrin,* for Atlanta Committee for the Olympic Games and AT&T Corp. et al.