A03A0428. ANDERSON et al. v. ATLANTA COMMITTEE FOR
THE OLYMPIC GAMES, INC.
A03A0429. HAWTHORNE et al. v. ATLANTA COMMITTEE FOR
THE OLYMPIC GAMES, INC.
(584 SE2d 16)

JOHNSON, Presiding Judge.

These appeals arise from the bombing in Centennial Olympic Park during the 1996 Olympic Games. The central issue presented by the appeals is whether the Atlanta Committee for the Olympic Games, Inc., which leased the Park from the State during the Games, is entitled to summary judgment on the ground that it is insulated from liability by the Recreational Property Act.[1] We hold that summary judgment is not appropriate because there are material issues of fact about whether the Park, as it existed at the time of the explosion, was a commercial, rather than a recreational, property.

The Atlanta Committee for the Olympic Games (ACOG) organized and promoted the 1996 Olympic Games. As host of the Games, ACOG conceived of and created Centennial Olympic Park. The Park sits on 21 acres of land in downtown Atlanta and is owned by the State of Georgia through the Georgia World Congress Center Authority. From April 1996 to October 1996, the Authority leased the Park to ACOG as part of the Games.

The Park was the bustling hub of the 1996 summer Olympic Games. Each day, thousands of people visited the Park. There was no charge for admission to the Park, and visitors there could enjoy free sights and activities. The Park contained acres of grass known as the "Great Lawn Area," pathways of commemorative engraved bricks, a plaza with the Olympic Rings Fountain, a 100-year-old transplanted Georgia tree, public artwork and other exhibits, a dance hall stage, a natural amphitheater, and various free concerts and entertainment.

The Park also contained ACOG's Super Store, selling Olympic memorabilia. There was a large food court called Savor the South. In addition, ACOG sub-licensed the property to various corporate sponsors. The Park contained Anheuser-Busch's Bud World sports bar, a Coca-Cola center, a Swatch watch pavilion, a General Motors pavilion showcasing GM products, and the AT & T Global Olympic Village — a 105,000-square-foot building that contained, among other

---

[1] OCGA § 51-3-20 et seq.

things, a large consumer pavilion promoting AT & T products as well as broadcast studios for NBC-TV and other media outlets.

In the early morning hours of July 27, 1996, a bomb exploded in the Park. Larry Joe Anderson, John Hawthorne, and others sued ACOG for wrongful death and personal injuries allegedly caused by the explosion. The trial court granted summary judgment to ACOG and other defendants, finding that the Recreational Property Act insulates them from liability.

Anderson, Hawthorne, and others appealed to the Supreme Court of Georgia to challenge the constitutionality of the Recreational Property Act. The Supreme Court found that the Recreational Property Act is constitutional, but adopted a new test, which balances the recreational and economic aspects of an activity, to determine if the Act applies to such activity.[2] The Supreme Court reversed the grant of summary judgment to ACOG and remanded the case to the trial court with direction that it apply the new balancing test to determine if the Recreational Property Act applies to the Park.[3]

On remand, the trial court again found that the Recreational Property Act applies to the Park and granted summary judgment to ACOG. The court also granted summary judgment to ACOG on the merits of the claims of fraud, negligent misrepresentation, and nuisance.

Anderson, Hawthorne, and others have filed two separate appeals from the trial court's summary judgment rulings, but have adopted each others' respective arguments. In Case No. A03A0428, they challenge the trial court's grant of summary judgment to ACOG on the basis that the Act applies to the Park, while in Case No. A03A0429 they challenge the trial court's summary judgment rulings on the merits of their fraud, negligent misrepresentation, and nuisance claims. We reverse the trial court's summary judgment ruling in Case No. A03A0428, but affirm the rulings in Case No. A03A0429.

## Case No. A03A0428

1. The purpose of the Recreational Property Act is to encourage landowners[4] to make their property available to the public for recreational purposes by limiting the liability of such owners.[5] The Act provides that except as specifically recognized by OCGA § 51-3-25,[6] "an

---

[2] *Anderson v. Atlanta Committee &c.*, 273 Ga. 113, 115-117 (2) (537 SE2d 345) (2000).

[3] Id.

[4] Under the Act, "owner" means not only a possessor of a fee interest in the property, but also a tenant, lessee, occupant, or person in control of the premises. OCGA § 51-3-21 (3).

[5] OCGA § 51-3-20 et seq.

[6] OCGA § 51-3-25 (1) provides that nothing in the Act limits liability for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."

owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes."[7] Recreational purposes include, but are not limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.[8]

In the prior appeal of this case, the Supreme Court recognized that the Act may apply in situations where commercial interests are mixed with recreational activities.[9] But, the Court noted, Georgia case law provides little guidance in determining the applicability of the Act in such mixed-use situations.

> Although the cases refer to the business interests of the property owner, an owner's profit motive does not necessarily create a reasonable inference that the event is commercial rather than recreational in nature. Rather, it is the purpose for which the owner earned the profits. For example, profits earned that are used to pay for property maintenance or public services are not profits in the ordinary commercial sense of the word.[10]

Having found little guidance in Georgia, the Court turned to foreign jurisdictions which have considered situations involving commercial interests mixed with recreational activities. The Court found persuasive and adopted an objective balancing test promulgated by the Wisconsin Court of Appeals to be used in such situations to determine whether an activity is recreational or commercial.[11]

> The test requires that all social and economic aspects of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence.[12]

---

[7] OCGA § 51-3-22.

[8] OCGA § 51-3-21 (4).

[9] *Anderson*, supra at 116 (2).

[10] (Citation and punctuation omitted.) Id.

[11] *Silingo v. Village of Mukwonago*, 156 Wis.2d 536, 542-545 (458 NW2d 379) (Wis. App. 1990).

[12] (Citation, punctuation and emphasis omitted.) *Anderson*, supra at 117 (2).

The user's subjective assessment of the activity may also be considered, but is not the controlling factor.[13]

In remanding the case for the trial court to apply this balancing test, the Supreme Court expressly directed the trial court to bear in mind the holding in *Lau's Corp. v. Haskins*,[14] which establishes the rule for review of summary judgment in negligence cases.[15] The *Lau's Corp.* case provides: "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[16]

In applying the balancing test, with the summary judgment rule in mind, to the instant case, we note that the relevant time period for our consideration is the date of the explosion. ACOG's pre-Olympic vision of what it hoped the Park would become is not material. And evidence of the Park as it exists today has no bearing on our review of the matter. Rather, we shall consider the social and economic aspects of the Park as it existed during the Olympics, and most pertinently, on the date the bomb exploded in the Park.

We first consider the social aspects of the Park during the Olympics. The expansive lawn, the pathways, the plaza with a fountain, the public exhibits, the amphitheater, and the entertainment were all intrinsically recreational. Moreover, entry to the Park was free of charge, and various sights and activities were offered to the public for free. In fact, at the time of the explosion, a free concert was taking place. All of these factors suggest that one purpose of the Park was recreational.

But there were also significant economic aspects to the Park during the Olympics. The corporate pavilions, Bud World sports bar, food court, and Olympic souvenir store were intrinsically commercial. The corporate vendors sold services and goods to the public, not for mere recreational reasons, but for the purpose of furthering their own business interests. They not only generated millions of dollars in actual revenue, but also gained untold advertising and promotional value due to their conspicuous presence in the Park.

In addition to the conflicting objective evidence, the parties' subjective views about the nature of the Park are also at odds. On one hand, ACOG claims that it never planned to make a profit from the Park, and that it viewed the Park as a free gathering place for the public. On the other hand, the appellants believe that the Park was

---

[13] Id.
[14] 261 Ga. 491 (405 SE2d 474) (1991).
[15] Id.
[16] (Citation omitted.) Id.

highly commercialized and that its purpose was the economic benefit of the corporate vendors, including ACOG.

Given all the conflicting evidence on the social and economic aspects of the Park, we cannot say that the nature of the Park was so obviously recreational that summary judgment was appropriate.[17] On the record before us, ACOG, as the party moving for summary judgment, has not carried its burden of demonstrating that there is no genuine issue of material fact about the nature of the Park, and that the undisputed facts, construed in favor of the nonmoving parties, warrant judgment as a matter of law.[18] On the contrary, there are material issues of fact as to whether the Park was a commercial or a recreational venture.[19] Accordingly, the trial court's grant of summary judgment to ACOG on the ground that it is insulated from liability by the Act is hereby reversed.

On remand, there are two questions that must be answered. The first is a question of fact to be resolved by a jury, and the second is a question of law to be resolved by the court. The question of fact to be resolved by a jury is whether the nature of the Park, at the time of the explosion, was commercial or recreational. After a jury answers that question, the question of law to be resolved by the court is whether the Act applies to the Park and thereby insulates ACOG from liability.

The finding of fact on the first question will, of course, determine the court's answer to the second question. If a jury finds that the purpose of the Park was commercial, then the court would find that the Act does not apply. Conversely, if a jury finds that the Park was recreational, then the court would find that the Act applies. The factual and legal questions may be resolved by a bifurcated trial, or any other method deemed appropriate by the trial judge. Whatever procedure is used, the jury must not be made aware that their factual finding will affect the subsequent legal question of immunity under the Act.

## Case No. A03A0429

2. Anderson, Hawthorne, and others contend that the trial court erred in granting summary judgment to ACOG on the claims of fraud and negligent misrepresentation. Those claims are based on statements made by ACOG's president and security director to the effect

---

[17] See *Silingo*, supra at 544-545.

[18] Compare *Potkay v. City of Marinette*, 197 Wis.2d 118 (541 NW2d 838) (Wis. App. 1995) (summary judgment appropriate where no factual dispute that event was recreational).

[19] Compare *Fischer v. Doylestown Fire Dept.*, 199 Wis.2d 83 (543 NW2d 575) (Wis. App. 1995) (balancing test applied and revealed no conflicting issues of material fact).

that Atlanta would be "the safest place on the planet" during the Olympic Games. Contrary to the appellants' contentions, those mere statements of opinion do not support fraud or negligent misrepresentation claims.

The tort of fraud has five elements: a false representation by the defendant, scienter, an intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff.[20] However, mere statements of opinion cannot constitute the basis for a claim of fraud.[21]

> Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And when the representation consists of general commendations or mere expressions of opinion, hope, expectation and the like, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.[22]

In this case, any statements by ACOG representatives that Atlanta would be the safest place on earth during the Games were mere expressions of opinion, hope, and expectation. They were not statements of fact upon which the appellants could have justifiably relied. Accordingly, the fraud claim premised on such statements of opinion is without merit.

Likewise, the appellants' claim of negligent misrepresentation based on those statements must fail. The same principles apply to both fraud and negligent misrepresentation, and therefore justifiable reliance is an essential element of a claim asserting negligent misrepresentation.[23] As noted above, Anderson, Hawthorne, and others could not have justifiably relied on mere expressions of opinion about the safety of Atlanta during the Games, and such opinions do not support their negligent misrepresentation claim.[24] The trial court correctly granted summary judgment to ACOG on the claims of fraud and negligent misrepresentation.

---

[20] *McCrimmon v. Tandy Corp.*, 202 Ga. App. 233, 234 (1) (414 SE2d 15) (1991).

[21] Id.

[22] (Citation, punctuation and emphasis omitted.) *Doe v. Prudential-Bache &c. Partners*, 222 Ga. App. 169, 176 (5) (474 SE2d 31) (1996).

[23] *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 771-772 (2) (531 SE2d 200) (2000).

[24] The appellants' negligent misrepresentation claim is based on the theory that one who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information. Restatement, Second, Torts, § 311.

3. Anderson, Hawthorne, and others argue that the trial court erred in granting summary judgment to ACOG on their nuisance claim. The argument is without merit.

"A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."[25] However, "[t]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another."[26]

ACOG was certainly authorized by law to operate the Park. Since the Park itself was lawful, it could have become a nuisance only if conducted in an illegal manner. There is, however, no evidence that ACOG operated the Park in an illegal manner. On the contrary, the undisputable fact is that ACOG operated the Park lawfully. Because the Park was a legal enterprise operated as the law authorized, it cannot have been a nuisance.[27] The trial court therefore did not err in granting summary judgment to ACOG on the nuisance claim.

*Judgment reversed in Case No. A03A0428. Judgment affirmed in Case No. A03A0429. Eldridge and Mikell, JJ., concur.*

DECIDED JUNE 12, 2003 —
RECONSIDERATION DENIED JUNE 26, 2003 — ▮▮▮▮▮

*Slappey & Sadd, James N. Sadd, Gregory, Christy & Maniklal, Hardy Gregory, Jr., Taylor, Harp & Callier, Jefferson C. Callier,* for appellants (case no. A03A0428).

*Bauer & Deitch, Gilbert H. Deitch, Garland, Samuel & Loeb, Robin N. Loeb,* for appellants (case no. A03A0429).

*Hawkins & Parnell, Thomas R. Mock, Jr.,* for appellee.

---

[25] OCGA § 41-1-1.

[26] (Citations and punctuation omitted.) *City of Douglasville v. Queen,* 270 Ga. 770, 773 (4) (514 SE2d 195) (1999).

[27] See id. (city's holding of a parade in the vicinity of a railroad was not, as a matter of law, a nuisance).