A08A0476. ODUM et al. v. SUPERIOR RIGGING & ERECTING COMPANY, INC. et al.
(662 SE2d 832)

MILLER, Judge.

Hoke Odum, Jr., was working on a construction site when a crane operated by David T. Hastings struck another crane, knocking a piece of equipment into Odum, who fell and was injured. Odum and

---

his wife, Mary L. Odum, brought this negligence claim against Hastings and Hastings' employer, Superior Rigging & Erecting Company, Inc. ("Superior"). Superior moved for summary judgment on the grounds that Hastings was a borrowed servant of the general contractor, Hardin Construction Company, LLC ("Hardin"), and that as a matter of law Superior could not be held vicariously liable for Hastings' alleged negligent acts. The trial court granted summary judgment to Superior, and the Odums appeal. For the reasons set forth below, we affirm.

> We conduct a de novo review of both the law and the evidence on appeal from the grant or denial of a motion for summary judgment. We view the evidence in a light most favorable to the nonmovant in order to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.

(Punctuation and footnotes omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 407 (634 SE2d 162) (2006). So viewed, the evidence shows that Hardin was the general contractor for the Mayfair Renaissance Condominium Tower project in Atlanta. Superior provided tower crane operators to Hardin for use on the project pursuant to "Crane Rental Agreements" executed by Superior and Hardin. From July 15, 2000 through October 30, 2000, Superior and Hardin entered into eight Crane Rental Agreements, including one in which Superior provided Hastings to serve as a crane operator from October 30, 2000 to November 5, 2000.

The Crane Rental Agreements were in addition to a Subcontract Agreement pursuant to which Superior agreed to provide "Tower Crane Operators" and "Hoist Operators" to Hardin.[1] For crane operators, the subcontract provided for price terms of $40.00 per hour of "straight time," and $50.00 per hour of overtime. As provided in the Subcontract Agreement, "[a]ll operators hired under this agreement are responsible for maintaining and operating cranes and hoists in accordance with manufacturer and OSHA standards and regulations." The Subcontract Agreement also provides that Superior will "furnish and pay for all labor, materials, equipment, supervision and all other costs necessary for the proper execution of the Subcontractor's Work . . . ," and that Superior will provide "only qualified workmen" and "shall provide competent supervision."

---

[1] The Subcontract Agreement was dated June 30, 2000, and executed on behalf of Hardin on July 21, 2000, and on behalf of Superior on September 7, 2000. The Crane Rental Agreement that provided Hastings' services on the date of the injury was executed on or around October 30, 2000 and November 5, 2000.

Testimony showed that Hastings' specific job tasks, including directions given to Hastings to move or operate his tower crane, were supervised or directed by Hardin personnel or persons authorized by Hardin (and unaffiliated with Superior) to give Hastings such direction. On November 3, 2000, while Hastings was working at the project as a crane operator, Odum was working for another subcontractor. As Odum was working, the jib of the crane that Hastings was operating hit the load line of another crane, which knocked a compressor into Odum, who fell to the floor below.

On the date of Odum's injury, Superior did not have any supervisors, foreperson, or managerial personnel at the project to direct or supervise Hastings or the other tower crane operators. Superior also presented unrebutted evidence that Hardin retained the right to discharge Hastings, or any other employee provided to Hardin by Superior. Superior asserted that Hardin used this authority to discharge four employees that it provided to Hardin, including Hastings.

At issue is whether the undisputed facts show that Hastings was a borrowed servant of Hardin. The "borrowed servant" rule is an exception to the doctrine of respondeat superior. "If a master lends his servants to another[,] then the master is not responsible for any negligence of the servant committed within the scope of his employment by the other." (Citation and punctuation omitted.) *Staffing Resources v. Nash*, 218 Ga. App. 525 (1) (462 SE2d 401) (1995).

> [I]n order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant.

(Citation and punctuation omitted.) *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981). Further, "where the contract between the two employers explicitly sets forth each requirement of the borrowed servant doctrine, the contract between the parties is controlling as to their responsibilities thereunder." (Citation and punctuation omitted.) *Southway Indus. Svcs. v. Boyd*, 283 Ga. App. 850, 853 (642 SE2d 889) (2007).

First, the Odums contend that the Subcontract Agreement and not the Crane Rental Agreement controlled the provision of crane operators by Superior to Hardin, and that because the Subcontract Agreement contained provisions inconsistent with the borrowed servant rule, the trial court erred in granting summary judgment to Superior. We disagree.

Even if, as the Odums maintain, the Subcontract Agreement is the sole controlling agreement as to Hastings' work on the project, it does not preclude an operator from becoming a borrowed servant of Hardin. While the Subcontract Agreement states that Superior will furnish "supervision," there is no requirement that it provide on-site supervision of any operators. Nor is the Subcontract Agreement, as to either party, "an express contract as to risk whereby responsibility for the negligence of the servant is waived or renounced." *Tim's Crane & Rigging v. Gibson*, 278 Ga. 796, 798 (604 SE2d 763) (2004). Thus, if the Subcontract Agreement controls, the general rule would apply, and Hastings would be a borrowed employee of Hardin if the three prongs of the borrowed servant doctrine are otherwise satisfied. See *Six Flags Over Ga.*, supra, 247 Ga. at 375, 377 (1).

Here, as before the trial court, Superior has pointed to evidence in the record showing that, on the date of Odum's injury, Hardin had control and direction over Hastings' work, that Superior had no control over the work, and that Hardin had the right to discharge Hastings in its exclusive discretion. The Odums make no attempt to show otherwise. As a result, Superior has made the required showings under *Six Flags Over Ga.*, supra.

Moreover, we disagree with the Odums that the October 30, 2000 Crane Rental Agreement is inapplicable. Both the Crane Rental Agreement and the Subcontract Agreement pertain to Superior's provision of crane operators to Hardin, but the Crane Rental Agreement is the latter expression of the parties' intent. See *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995) ("the modification of a contract may be accomplished by a subsequent mutual agreement of all the parties thereto").

As the Odums point out, the Crane Rental Agreement does not contain a price term, and they contend that the lack of this essential term rendered the agreement unenforceable. See generally *BellSouth Advertising &c. Corp. v. McCollum*, 209 Ga. App. 441, 444 (2) (433 SE2d 437) (1993). The Subcontract Agreement, however, reflects the parties' agreement as to the hourly rate for crane operators, and the parties' execution of the more narrowly tailored Crane Rental Agreement would not constitute a novation or contractual merger such that the Subcontract Agreement was extinguished thereby. See, e.g., *Wallace v. Bock*, 279 Ga. 744, 746 (620 SE2d 820) (2005) (subsequent escrow agreement would supercede and discharge earlier purchase agreement by merger only if the subsequent agreement was both inconsistent with and completely covered the same subject matter of the earlier contract).

The Odums also argue that there was no new consideration to support the Crane Rental Agreement because Superior promised

nothing it was not legally bound to do under the Subcontract Agreement. See *Hiers-Wright Assoc. v. Manufacturers Hanover Mtg. Corp.*, 182 Ga. App. 732, 734 (2) (356 SE2d 903) (1987). Pretermitting this claim, however, Hardin specifically accepted Superior's performance as provided under the terms of the Crane Rental Agreement, and so the Odums cannot show that the Crane Rental Agreement was unenforceable for any lack of consideration. See, e.g., *Thomas*, supra, 265 Ga. at 397 (1) (notwithstanding whether there was consideration, performance and acceptance of performance rendered agreement enforceable).

The Crane Rental Agreement provided that Hastings' services were subject to the following condition:

> Lessee [Hardin] agrees that the equipment (which includes, but is not limited to, any crane, lifting lug or device, chocker or shackle, and any other rigging equipment provided on the crane, equipment or otherwise, hereinafter referred to collectively as "the equipment") and all persons operating the equipment, including Lessor's [Superior's] employees (hereinafter collectively referred to as the "Operator") are under Lessee's exclusive jurisdiction, supervision and control. Lessee acknowledges that at all times while the Operator is on the job site that Lessee has the right to exercise complete direction and control over the Operator, that Lessor will exercise no control over the Operator and that Lessee has the exclusive right to discharge the Operator from the work he is doing, that Lessee may require Lessor to replace the operator with another of Lessor's employees and that Lessee may put the crane operator to other work.

We have previously found an identical contractual provision satisfied all three elements of the borrowed servant doctrine. *Southway*, supra, 283 Ga. App. at 851-853. Thus,

> [w]hether or not [Hardin] ever assumed any control or supervision of [Hastings], it acquired the right to do so and accepted the status of an employer. Because of this, any negligence of [Hastings] would not change the situation, as such negligence under the circumstances would be chargeable to [Hardin] rather than to [Superior].

(Citation and punctuation omitted.) Id. at 853. As a result, the trial court correctly granted summary judgment to Superior.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 3, 2008.

*Donald W. Johnson,* for appellants.

*Hawkins & Parnell, Warner S. Fox, Wayne W. Dempsey, Jr.,* for appellees.