A11A0628. DOMINIC v. EUROCAR CLASSICS et al.
(714 SE2d 388)

MILLER, Presiding Judge.

This case arises out of a contract entered into between S & W Sports Cars, Inc. d/b/a Ferrari of Atlanta (hereinafter referred to as "Ferrari of Atlanta") and Sam Baez, on behalf of Eurocar Classics, for the repair of Marcus Dominic's Ferrari. Following a vehicle fire resulting in the total destruction of Dominic's Ferrari, Dominic sued Ferrari of Atlanta for breach of the repair contract between Ferrari of Atlanta and Eurocar Classics and for negligence during its repair of Dominic's vehicle. The trial court granted Ferrari of Atlanta's motion for summary judgment as to both claims, finding that Dominic was not a third-party beneficiary of the repair contract and that Ferrari of Atlanta owed no duty of care to Dominic. Dominic appeals to challenge the trial court's findings. We discern no error and affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and footnote omitted.) *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 434 (629 SE2d 22) (2006). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the

---

[56] *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998); *Kehinde v. State*, 236 Ga. App. 400, 401 (512 SE2d 311) (1999).

nonmovant." (Citation and footnote omitted.) Id.

So viewed, the record shows that Dominic purchased a 2000 Ferrari 360 Modena with a salvage title from a dealer in California. After making several trips to California to inspect the Ferrari and check the progress of the repairs on it, Dominic had the Ferrari shipped to Atlanta. Dominic inspected the vehicle upon receiving it in Atlanta and found that it was running fine. When Dominic started the vehicle the next morning, however, it began overheating. Dominic testified that the overheating had not been a problem when he inspected the vehicle in California, but that it arose during shipment of the vehicle. Dominic contacted several Ferrari repair shops listed in the Yellow Pages and eventually reached Baez at Eurocar Classics, who indicated that he could repair the vehicle's overheating problem. Dominic had his Ferrari towed to Eurocar Classics, where he left the vehicle for repair as well as an oil change. A couple of days later, Baez contacted Dominic and advised him that the vehicle needed a thermostat, radiator fan, and relay switches. Dominic authorized Baez and paid him in cash to go forward with the repairs. Before the repairs were completed, however, Baez contacted Dominic to let him know that Eurocar Classics was unable to "bleed" the vehicle's cooling system (i.e., extract all air pockets in the system in order to have a continuous flow). With Dominic's permission, Baez drove the vehicle to Ferrari of Atlanta for advice on bleeding the vehicle's cooling system, as well as on the radiator fans that continued to blow fuses. As set forth in the repair invoice between Ferrari of Atlanta and Eurocar Classics, Ferrari of Atlanta's diagnosis of the vehicle was the presence of an air pocket in the cooling system and a blown fuse in the radiator. To correct these problems, Ferrari of Atlanta bled the cooling system and replaced the fuse. After Ferrari of Atlanta performed these repairs, it returned Dominic's vehicle to Eurocar Classics. Dominic then picked up his vehicle from Eurocar Classics,[1] and Dominic testified that the vehicle worked "fine, perfect" on the way home.

After about a week, during which time the Ferrari had been sitting in Dominic's garage, Dominic started the vehicle and drove it around his neighborhood to ensure the battery did not drain; while he was at a stop sign, his vehicle started overheating again. Dominic drove the Ferrari back to his garage and called Baez about the issue. Baez told Dominic to bring the vehicle back to Eurocar Classics because the cooling system needed more bleeding. A few days later, on May 25, 2006, Dominic had the vehicle towed back to Eurocar

---

[1] Dominic stated in his affidavit that at the time he picked up his Ferrari from Eurocar Classics, Baez did not inform him that Ferrari of Atlanta had worked on the vehicle.

Classics for a second time. Dominic testified that he was expecting Baez to bring the vehicle back to Ferrari of Atlanta to have them finish bleeding the system; however, when he went to check the status of Baez's progress, Dominic saw Baez doing what he thought was bleeding the cooling system again. When Dominic finally retrieved his Ferrari, Baez told him that he bled the cooling system again, and that the cooling system was fixed. Dominic drove the Ferrari home from Eurocar Classics without any overheating problems.

After Dominic's Ferrari was returned to him for a second time, however, the overheating issue occurred again about a month later, in July 2006. At that time, Dominic had been driving his vehicle on Interstate 20, and after about 20 miles, he noticed coolant spilling out of the radiator; he testified that the radiator cap flew off and hit the back windshield of his vehicle and that the thermostat indicated his vehicle was overheating. Dominic decelerated his vehicle and pulled it over to the emergency lane. Upon opening the engine compartment, Dominic saw that coolant was covering the engine and was continuing to spill out. Dominic called Baez to tell him that his car was overheating again, and Baez told him to bring the vehicle back to Eurocar Classics. Dominic testified that he continued to express his frustration with Baez and his inability to fix the overheating problem, at which point Baez told Dominic that he needed to take the vehicle back to Ferrari of Atlanta because they were the ones who bled the cooling system. Dominic's response was that he had brought the car to Baez and that Baez was the one who needed to take it back to Ferrari of Atlanta. While Dominic and Baez were talking, the Ferrari caught on fire. The Ferrari was completely destroyed as a result of the fire. Dominic's expert testified that when the coolant spilled onto the overheated engine, the water in the coolant evaporated out, and the remaining ethylene glycol mixture caught fire. Dominic's expert also testified, however, that he did not have an opinion as to whether the foregoing situation was caused by the work performed by Ferrari of Atlanta.

In August 2006, Dominic filed a complaint against Eurocar Classics and Baez for conversion, breach of contract, negligence, and punitive damages flowing from the repair of his Ferrari.[2] Dominic thereafter amended his complaint to include Ferrari of Atlanta as a defendant and raised against it a claim for breach of contract, on the theory that Dominic was a third-party beneficiary of the repair contract between Ferrari of Atlanta and Eurocar Classics; Dominic also raised counts of negligence and punitive damages against

---

[2] Dominic later amended his complaint to include a claim of fraud against Baez.

Ferrari of Atlanta. Ferrari of Atlanta filed a motion for summary judgment. Following a hearing, the trial court issued an order granting the motion, from which Dominic now appeals.[3]

1. In his first enumeration of error, Dominic argues that the trial court erred in finding that he was not a third-party beneficiary of the repair contract between Eurocar Classics and Ferrari of Atlanta. We disagree.

As a general rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract. See OCGA § 9-2-20 (a); see also *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391 (1) (367 SE2d 278) (1988) ("As a general rule, one not in privity of contract with another cannot maintain an action against him for breach of the contract.") (citation and punctuation omitted). Nevertheless, OCGA § 9-2-20 (b) provides an exception to this general rule insofar as "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." "A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." (Citation and punctuation omitted.) *Kaesemeyer*, supra, 278 Ga. App. at 437 (1). "A third party has standing to enforce that type of contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." (Citation and punctuation omitted.) Id. Thus, "a third-party beneficiary may be created only by the express terms of the contract . . . ." (Citation omitted.) *Perry Golf Course Dev. v. Housing Auth. of City of Atlanta*, 294 Ga. App. 387, 388 (1) (670 SE2d 171) (2008).

Here, there is no dispute that the repair contract at issue was between Ferrari of Atlanta and Eurocar Classics, and that Dominic was not a named party to that repair contract. Thus, absent such privity of contract between Ferrari of Atlanta and Dominic, third-party beneficiary status is Dominic's sole mode of recovery for alleged violations of the repair contract. However, Dominic has failed to point to any express oral or written contract terms specifically identifying him as a third-party beneficiary of the repair contract between Ferrari of Atlanta and Eurocar Classics. Here, the repair invoice constituted the only writing between Eurocar Classics and Ferrari of Atlanta regarding their repair agreement. The invoice

---

[3] The trial court also granted summary judgment in favor of Baez and Eurocar Classics as to Dominic's claims of fraud, conversion, and punitive damages. The rulings of the trial court with respect to Eurocar Classics and Baez, however, are not at issue in this appeal.

clearly listed Eurocar Classics as the customer for whom Ferrari of Atlanta performed repairs; while the invoice referenced the "owner" — specifically, "A owner states that one radiator fan will not come on, advise" — Dominic himself admitted that this statement was nothing more than a description of the problem that Baez reported to Ferrari of Atlanta. Moreover, the record reflects that Eurocar Classics was the party who directly paid Ferrari of Atlanta for the repair work performed on Dominic's vehicle. Dominic's affidavit testimony indicates that the repair contract was performed for the benefit of Baez and Eurocar Classics: (i) that Baez "took the [v]ehicle to Ferrari of Atlanta in relation to the work that I paid him for and thus he hired them as a consultant for himself"; and (ii) that Baez returned the vehicle to Dominic "without ever informing me that Ferrari of Atlanta had worked on the [v]ehicle on his behalf." Finally, there is no record evidence showing that Ferrari of Atlanta had any knowledge that Dominic was the owner of the Ferrari until it was served with Dominic's lawsuit. Thus, we discern no genuine dispute as to the fact that the repair contract was made for the benefit of the named parties, and any benefit which flowed to Dominic was merely incidental. See *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 352 (4) (568 SE2d 559) (2002).

Rather than point to any conflicting record evidence, the crux of Dominic's argument is that the particular circumstances of his case are those under which he, as the consumer, is a third-party beneficiary by operation of law. Dominic specifically claims that where an owner takes his vehicle to a mechanic and the mechanic takes the vehicle to another, more specialized repair facility, both the mechanic and the specialized repair facility know or should know that the beneficiary of the work is the vehicle's owner. We disagree.

Dominic offers no legal authority supporting his assertion.[4] The legal authority that does exist confers this status only through the presence of an express contract term tending to show that promises were made for the express benefit of a third party. See, e.g., *Southeast Grading v. City of Atlanta*, 172 Ga. App. 798, 800 (1) (324 SE2d 776) (1984) (finding there was nothing in a general contract "tending to show that promises were made by the [property owner] for the benefit of [the subcontractor]," and that, at best, it incidentally benefitted the subcontractor). The absence of any such oral or written contract provisions in the instant case foreclosed Dominic's status as an intended third-party beneficiary to the repair contract.

---

[4] Thus, we note that Dominic's argument consists of nothing more than unsupported legal conclusions that are without probative value, and which cannot prevent the entry of summary judgment. *Morris v. Gavin, Inc.*, 268 Ga. App. 771, 772 (603 SE2d 1) (2004).

Accordingly, Dominic had no standing as a third-party beneficiary to bring a breach of contract action pursuant to the repair contract between Ferrari of Atlanta and Eurocar Classics. Ferrari of Atlanta was therefore entitled to judgment as a matter of law.

2. Dominic also sought to recover damages for his vehicle on the theory that Ferrari of Atlanta negligently performed repair work on his Ferrari. In support of his negligence claim, Dominic argued that Ferrari of Atlanta owed him a duty of care because he was a third-party beneficiary to the repair contract between Ferrari of Atlanta and Eurocar Classics. The trial court, however, found that Ferrari of Atlanta owed no duty of care to Dominic that was independent of the repair contract, and that therefore, Dominic's negligence claim failed as a matter of law. We agree.

While privity of contract is generally not necessary to support an action in tort, "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract . . . ." OCGA § 51-1-11 (a). Thus, "[w]here privity of contract between the parties does not exist, to constitute a tort, the duty must arise independent of the contract." (Punctuation omitted.) *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 555 (a) (644 SE2d 440) (2007).

Dominic claims that Ferrari of Atlanta breached its alleged duty by failing to properly bleed the radiator system. The duties allegedly owed by Ferrari of Atlanta arose only from its contractual duty to repair the vehicle pursuant to the repair contract between Ferrari of Atlanta and Eurocar Classics. Dominic asserts no legal duty that Ferrari of Atlanta owed independent of that repair contract.[5] As Dominic was neither in privity to the repair contract between Ferrari of Atlanta and Eurocar Classics, nor an intended third-party beneficiary thereto,[6] Ferrari of Atlanta was entitled to judgment as a matter of law on Dominic's negligence claim.[7]

---

[5] Dominic apparently argues that a duty of care arose independently to the repair contract insofar that Ferrari of Atlanta knew that Baez "is in the repair industry as a mechanic and allowed him access to its garage, the type of access that is only allowed to persons in the industry." To the extent Dominic is attempting to assert an exception to the privity requirement, such exists "in cases of negligent misrepresentation by a professional, reasonably relied upon by a foreseeable person or class of persons." (Citations and punctuation omitted.) *J. Kinson Cook*, supra, 284 Ga. App. at 555 (a). Nevertheless, "the exception to the privity requirement does not apply here," where Dominic's claims against Ferrari of Atlanta do not allege negligent misrepresentation against Ferrari of Atlanta. Id.

[6] See supra discussion Division 1.

[7] Because Dominic's negligence claim against Ferrari of Atlanta is foreclosed by the

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 13, 2011.

*Ernest N. Tate*, for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, W. Jason Pettus, Skedsvold & White, Bryce W. Mowbray III, Georginia B. Howard*, for appellees.

---

absence of a duty of care, we need not address Dominic's arguments on appeal regarding the proximate cause element of his negligence claim. We note, however, that the trial court did in fact find that the issues of proximate and intervening causes would have been questions for the jury in this case (had there been a finding that Ferrari of Atlanta owed Dominic a duty of care).