**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0345. HEALTHCARE STAFFING, INC. v. EDWARDS, et al.

A21A0346. HEALTHCARE STAFFING, INC. v. MOORE, et al.

A21A0395. HEALTHCARE STAFFING, INC. v. EDENFIELD, et al.

HODGES, Judge.

These cases arise from the alleged abuse by Errol Wilkins against three mentally incapacitated adults at a behavioral health facility. Appellant Healthcare Staffing, Inc. ("HCS") employed Wilkins at the time he purportedly abused these patients of Gateway Behavioral Health Services. Guardians for the patients — Sadie Edwards, Catherine Moore, and Cheryl Edenfield — sued HCS for failure to train and supervise, negligent retention, breach of contract, assault and battery, negligent hiring, and fraud. The parties filed cross motions for summary judgment, which the trial court denied. HCS sought and obtained a certificate of immediate review in each

case, and this Court granted its interlocutory applications.[1] HCS timely appealed, contending that the trial court erred in (1) denying its motion for summary judgment for claims arising from vicarious liability for the actions of its employees because the borrowed servant doctrine precludes liability; (2) denying its motion for summary judgment on appellees' direct claims against it for negligent hiring, training, and retention; and (3) denying its motion for summary judgment on appellees' breach of contract claim because the Gateway patients were not third-party beneficiaries of the contract between HCS and Gateway. For the reasons that follow, in all three cases we affirm the trial court's denial of summary judgment as to appellees' tort claims and reverse its denial as to the breach of contract claims, and we remand the cases for further proceedings consistent with this opinion.

To obtain summary judgment,

> the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving [parties], warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential

---

[1] We have consolidated the appeals for the purpose of issuing this opinion because they involve identical legal issues.

2

element of [plaintiffs'] case. If the moving party discharges this burden, the nonmoving [parties] cannot rest on [their] pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citation omitted.) *Matthews v. Mills*, 357 Ga. App. 214 (850 SE2d 424) (2020).

So viewed, the evidence shows that A. E., J. M., and Q. E. (collectively the "Patients") are mentally incapacitated adults who were patients at Gateway. Gateway is "a public agency and instrumentality of the State of Georgia" which provides "core and specialty mental health, developmental disability and addictive diseases services to citizens in Bryan, Camden, Chatham, Effingham, Glynn, Liberty, Long, and McIntosh counties[.]" Gateway contracted with HCS for HCS to provide it with personnel under specified terms through a Healthcare Staffing Agreement (the "Staffing Agreement"). Through this arrangement, as will be discussed in greater detail below, HCS hired Wilkins. In 2016, a co-worker of Wilkins reported that Wilkins had been physically abusing Q. E. for some time, which resulted in Gateway conducting an investigation through which the allegations of abuse were substantiated. It was subsequently alleged that Wilkins also abused A. E. and J. M., and Wilkins' employment was terminated. The legal guardians of the Patients filed lawsuits against HCS due to the abuse its employee allegedly inflicted on the Patients

3

and the failure of its employees to report this abuse. Ultimately, HCS moved for summary judgment on all of the claims against it, which the trial court denied in all three cases. Following this Court's grant of interlocutory review, HCS now appeals.

1. HCS contends that the trial court erred in denying its motions for summary judgment as to the claims stemming from vicarious liability for the actions of its employees because the borrowed servant doctrine precludes liability. We disagree.

All three appellees bring two claims which are premised on vicarious liability for the actions of Wilkins and other HCS employees who were aware of his alleged abuse and failed to timely report it: (1) assault and battery; and (2) fraud. HCS argues that these claims must fail because of the borrowed servant exception to vicarious liability.[2]

> The 'borrowed servant' rule is an exception to the doctrine of respondeat superior. If a master lends his servants to another, then the master is not responsible for any negligence of the servant committed within the scope of his employment by the other. In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control[;] and (3) the special master had the exclusive right to discharge the servant.

---

[2] This is the only argument advanced by HCS as to why these claims fail.

4

(Citations and punctuation omitted.) *Odum v. Superior Rigging & Erecting Co.*, 291 Ga. App. 746, 748 (662 SE2d 832) (2008). "All three prongs of the test must focus on the occasion when the injury occurred rather than the work relationship in general." *Howard v. J.H. Harvey Co.*, 239 Ga. App. 677, 679 (1) (521 SE2d 691) (1999). And, "where the contract between the two employers explicitly sets forth each requirement of the borrowed servant doctrine, the contract between the parties is controlling as to their responsibilities thereunder." (Citation and punctuation omitted.) *Odum*, 291 Ga. App. at 748. As to the third prong, the phrase "exclusive right to discharge the servant" has been interpreted to mean the unilateral right to discharge, as opposed to the sole right to discharge. *Garden City v. Herrera*, 329 Ga. App. 756, 762 (1) (766 SE2d 150) (2014).

Pretermitting whether the borrowed servant doctrine applies to claims of intentional torts such as the ones involved in this lawsuit, HCS fails the third prong

of this analysis.[3] Here, the Staffing Agreement[4] provides as follows with regard to termination of HCS employees placed at Gateway:

**4.1 Requests for Removal or Transfer of Employees.** [Gateway] *may request removal* or transfer of [HCS] Personnel at any time, with or without cause. *Requests for removal* or transfer may be made either orally or in writing. All oral *requests for removal* must be confirmed by [Gateway] in writing on the next business day to be effective.

**4.2 Documentation of Terminations; Unemployment Compensation.** [Gateway] shall effectuate terminations of all Personnel and prepare appropriate separation notices and other required documentation. [HCS] shall also be responsible for compliance with applicable unemployment compensation law, rules and regulations. (Emphasis supplied.)

. . .

---

[3] Without specifically addressing whether the borrowed servant doctrine shields a general master from liability for the intentional torts of its employees, this Court has previously analyzed the applicability of the doctrine to a case involving intentional torts. *Howard*, 239 Ga. App. at 680 (2) (rejecting application of the borrowed servant doctrine in a case concerning assault and battery, false arrest, and intentional infliction of emotional distress due to failure to establish the third prong).

[4] Belatedly in the litigation in the trial court, appellees filed, with no legal analysis, a "Supplemental Staffing Agreement" which precedes the Staffing Agreement in time. In the briefing before this Court, the parties both rely on the Staffing Agreement as the operative contract as opposed to the Supplemental Staffing Agreement. Accordingly, we rely on the language of the Staffing Agreement in our analysis as well.

6

**4. 5 Classification of Personnel.** *[HCS] shall have the sole authority to hire and fire Personnel provided to [Gateway]*, and will be solely responsible for payment of their wages, related payroll taxes, if any, related unemployment contributions, and handling any of their unemployment and workers' compensation claims. . . . (Emphasis supplied.)

Missing from the language of the Staffing Agreement is any *requirement* that HCS honor the request of Gateway to terminate an employee. While the Staffing Agreement specifies the steps HCS must take upon deciding to terminate an employee, it does not specify that Gateway may unilaterally decide to terminate an HCS employee providing services to Gateway. Indeed, the Staffing Agreement specifically provides that HCS has the sole authority to fire employees it provides to Gateway. Accordingly, the borrowed servant doctrine does not shield HCS from vicarious liability for the actions of its employees, and the trial court did not err in denying summary judgment to HCS in this regard.

2. HCS argues that the trial court erred in denying it summary judgment on appellees' negligent hiring and retention claims. We deem this enumeration abandoned.

Appellees contend that HCS was negligent in hiring Wilkins due to prior violent felony convictions in his background as well as his inaccurate representation of his educational background in his application. They also contend that HCS was negligent in retaining Wilkins in light of the knowledge some of his co-workers had of his purported abuse of the Patients.

On appeal, HCS dedicates minimal attention in its principal brief to counter that the provisions of the Staffing Agreement gave Gateway authority as to who it would hire, that Gateway specifically identified Wilkins as an individual to hire outside of the typical recruitment protocol, and that HCS was not in charge of supervising Wilkins. Neither HCS' principal brief nor its reply brief contain any citation to authority at all in support of this enumeration. As a result, left unaddressed are pertinent legal questions such as the standards by which this Court analyzes claims of negligent hiring and retention generally, the extent to which we can rely on the obligations of the contract between HCS and Gateway to analyze any common law duties owed by HCS to the Patients, appellees' allegation that some of the individuals who failed to properly supervise Wilkins were other employees of HCS, or the degree to which provisions of the employee handbook are relevant to our

8

analysis. Indeed, HCS' briefing before the trial court lacked such legal authority as well.

The rules of this Court are clear that "[a]ny enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25 (c) (2). It is not the job of this Court to find legal authority to support a party's claim of error, nor would it be appropriate for us to do so. Accordingly, this enumeration is deemed abandoned. See *Estate of Nixon v. Barber*, 340 Ga. App. 103, 110 (2) (796 SE2d 489) (2017) ("But we need not reach the propriety of [appellees's] contention and the trial court's apparent grant of the motion to dismiss on this ground because the [appellants] abandoned this enumeration of error by failing to provide citation to authority in support of same.") (footnote omitted).

3. Lastly, HCS argues that the trial court erred in denying its motion for summary judgment on appellees' breach of contract claims. We agree.

"The questions presented by this [enumeration] require us to interpret the contract between [HCS and Gateway]. The interpretation of a contract is normally a question of law to be resolved by the court, and the orders of the lower court in this

case are therefore subject to de novo review." *Willesen v. Ernest Communications, Inc.*, 323 Ga. App. 457, 459 (1) (746 SE2d 755) (2013).

> As a general rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract. Nevertheless, OCGA § 9-2-20 (b) provides an exception to this general rule insofar as the beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract. A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person.

(Citations and punctuation omitted.) *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (1) (714 SE2d 388) (2011). However, "in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract *unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury*." (Citation and punctuation omitted; emphasis supplied.) *Anderson v. Atlanta Committee for the Olympic Games, Inc.,* 273 Ga. 113, 117 (4) (537 SE2d 345) (2000). Indeed, here, the evidence must demonstrate that any benefit conferred upon the Patients was intentional as opposed to incidental because "[t]he mere fact that [they] would benefit from performance of the agreement is not alone

10

sufficient." (Citation and punctuation omitted.) *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994).

On appeal, appellees contend that "[t]he promise of [HCS] to Gateway was to hire and lease qualified people to provide services to individuals such as [the Patients]. Hence, [the Patients were] the beneficiar[ies] of the contractual obligations of [HCS]." This argument appears to rely on the following sections of the Staffing Agreement:

> **1.2 Recruiting of Qualified Personnel.** [HCS] shall be responsible for recruiting qualified candidates to fill open positions according to [Gateway's] job descriptions and requirements. [HCS] shall pre-screen the candidates for employment with [Gateway] once qualified candidates have been identified. Pertinent information on pre-screened candidates will be reviewed with [Gateway] and [Gateway] will select the pre-screened candidates they desire to interview and consider for employment. [Gateway] will make the final selection of all candidates to be offered available positions and determine the appropriate rate of pay for each position. [HCS] shall then extend the offer of employment to the candidate selected by [Gateway] at the chosen rate of pay and upon acceptance of the offer shall employ the selected candidate.
>
> . . .

11

**2.1 Qualifications.** [HCS] shall provide [Gateway] Personnel who are appropriately experienced and qualified to perform the services required by [Gateway]. All professional Personnel provided by [HCS] will be properly licensed, certified or registered to practice in the State of Georgia and [HCS] will maintain appropriate documentation of their applicable licensing, certification, registration, training, and experience.

These portions of the Staffing Agreement evince no intention to directly benefit the Patients, and instead indicate merely incidental benefits from the placement of qualified personnel at Gateway. Under our law, such an incidental benefit is insufficient to confer third-party beneficiary status to the Patients, and thus the trial court erred in failing to grant HCS summary judgment on this claim by the appellees. See, e.g., *CDP Event Svcs.v. Atcheson*, 289 Ga. App. 183, 185 (1) (656 SE2d 537) (2008) (finding language in a contract between a security company and the licensee of a music venue requiring the security company to "prevent fights or other violent acts among the patrons" was not sufficient to make a patron a third-party beneficiary of the security contract because the contract did not specify a specific intention to benefit the patrons) (emphasis omitted); *Donnalley v. Sterling*, 274 Ga. App. 683, 686 (1) (618 SE2d 639) (2005) ("While the members of the football team may have incidentally benefitted from [an agreement between a football team and camp for the

12

team to provide first aid services when using camp grounds], we find nothing in the language indicating an intent to confer a direct benefit upon the individual players to protect them from physical harm."); *Gay v. Ga. Dept. of Corr.*, 270 Ga. App. 17, 23-24 (2) (606 SE2d 53) (2004) ("Furthermore, the Contract, when viewed as a whole, tends to show that the Association's safety-related promises are not intended to benefit the inmates [on a work detail]. . . . The Association's promise to provide a safe workplace does arguably benefit prisoners assigned to the work details. However, the benefit is incidental to the Contract.") (citations and punctuation omitted); *Page v. City of Conyers*, 231 Ga. App. 264, 266 (1) (a) (499 SE2d 126) (1998) (finding language in a government contract that it "will benefit the county and its residents" does not "evidence an intent to confer third-party rights upon [residents] . . . [because p]ractically, every contract entered into by a county is for some public benefit because the only business of the county is public business") (citation omitted); compare *Green v. Pateco Svcs., LLC*, 348 Ga. App. 132, 135 (1) (820 SE2d 285) (2018) (finding that plaintiff, an employee of DDR, was a third-party beneficiary because "the language of the contract between Pateco and DDR required Pateco to report to DDR any problems or defects observed while maintaining the parking lot and to do so 'in a manner which will minimize health, safety, legal, and other risks

13

to Owner, and its respective employees, agents, guests, and invitees'") (punctuation omitted).

In summary, we affirm the trial court's denial of summary judgment as to the tort claims asserted by appellees and we reverse the trial court's denial of summary judgment as to the breach of contract claim.

*Judgments affirmed in part and reversed in part, and cases remanded with direction. Miller, P. J., and Pipkin, J., concur.*